

**State of Louisiana**
DEPARTMENT OF JUSTICE
OFFICE OF THE ATTORNEY GENERAL
P.O. BOX 94005
BATON ROUGE
70804-9005

Jeff Landry
Attorney General

June 13, 2023

**VIA ECF**
Lyle W. Cayce
Clerk of Court
United States Court of Appeals, Fifth Circuit
F. Edward Hebert Building
600 S. Maestri Place
New Orleans, Louisiana 70130-3408

   **Re:**  *McNeal v. LeBlanc*, **No. 22-30180**
      Rule 28(j) Letter: *Taylor v. LeBlanc*, 68 F.4th 223 (5th Cir. 2023)

Dear Mr. Cayce:

  Under Federal Rule of Appellate Procedure 28(j), James LeBlanc directs the Court to *Taylor v. LeBlanc*, 68 F.4th 223 (5th Cir. 2023), *replacing* 60 F.4th 246 (5th Cir. 2023), a "pertinent and significant authorit[y]" that issued after briefing closed in this appeal from the denial of LeBlanc's motion to dismiss Brian McNeal's overdetention suit based on qualified immunity (QI).

  *Taylor* reversed the denial of LeBlanc's QI-based motion to dismiss an overdetention suit brought by a prisoner who alleged he was overdetained by over a year. 68 F.4th at 225–28. The withdrawn opinion awarded QI because the plaintiff didn't "meaningfully brief" QI's objective-unreasonableness prong. *Taylor*, 60 F.4th at 251–52. But the substituted opinion fully analyzes QI's second prong—asking if LeBlanc's specific alleged conduct was objectively unreasonable in light of clearly established law. *Taylor*, 68 F.4th at 228.

  The unanimous panel answered no. *Id.* Distinguishing "the conduct of lower-level officials" from LeBlanc's conduct in "supervis[ing] his entire Department," the substituted opinion holds that LeBlanc's specific alleged conduct—delegating release-date calculations to non-lawyers—was not objectively unreasonable in light of clearly established law. *Id.*

*Taylor* bears on this appeal in three ways.

First, *Taylor* confirms that—*contra* McNeal's contentions[1]—*Crittindon v. LeBlanc*, 37 F.4th 177 (5th Cir. 2022), doesn't "foreclose" QI here. Even after *Crittindon*, a court may not deny QI without evaluating the objective unreasonableness of LeBlanc's specific alleged conduct in light of clearly established law. *Taylor*, 68 F.4th at 228.

Second, *Taylor* teaches that the prong-two analysis focuses on LeBlanc's specific alleged conduct in "supervis[ing] the entire Department"—not "the conduct of lower-level officials" or the conduct of "the Department" generally. *But see* ROA.1009 (focusing on "DPSC's" knowledge).

Finally, *Taylor* confirms LeBlanc's QI can be resolved in his favor on prong two alone. McNeal "d[id] not point to anything that suggests the Constitution require[d]" LeBlanc to create policy or implement training to address the alleged cause of McNeal's alleged overdetention—a lower-level employee's negligent failure to immediately reissue McNeal's release certificate to the appropriate facility after McNeal was determined ineligible for transfer. *Id.*

Respectfully,

/s/ Elizabeth B. Murrill
Elizabeth B. Murrill
Solicitor General
Counsel for Defendant–Appellant

Word Count: 350

cc:   All Counsel (via ECF)

---

[1] Red Br. 10, 25–34.

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
May 15, 2023
Lyle W. Cayce
Clerk

No. 21-30625

Percy Taylor,

*Plaintiff—Appellee,*

versus

James LeBlanc, *Secretary*,

*Defendant—Appellant.*

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:21-CV-72

Before Graves, Ho, and Duncan, *Circuit Judges.*

James C. Ho, *Circuit Judge*:

We withdraw our prior opinion in this case, *Taylor v. LeBlanc*, 60 F.4th 246 (5th Cir. 2023), and substitute the following in its place.

* * *

The Fourteenth Amendment guarantees that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. § 1. So it should go without saying that the government cannot hold a prisoner without the legal authority to do so, for

No. 21-30625

that would "deprive" a person of his "liberty . . . without due process of law." *Id.*

Consistent with these principles, "[o]ur precedent establishes that a jailer has a duty to ensure that inmates are timely released from prison." *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011). "Detention of a prisoner thirty days beyond the expiration of his sentence in the absence of a facially valid court order or warrant constitutes a deprivation of due process." *Douthit v. Jones*, 619 F.3d 527, 532 (5th Cir. 1980).

The Louisiana Department of Public Safety and Corrections recently conducted a study that uncovered a substantial number of inmates who were detained long past the expiration of their sentences. *See Crittindon v. LeBlanc*, 37 F.4th 177, 183 (5th Cir. 2022). Many inmates are detained in jail during trial or sentencing, and then transferred to the Department to serve the rest of their sentence in prison. But the study discovered that some local jails in Louisiana were often slow to communicate with the Department. As a result, some inmates would not get credit for their jailtime in a timely manner, and would therefore remain in prison past the length of their sentences.

Percy Taylor was detained beyond the expiration of his sentence, but for a different reason: Department officials gave him credit for time served in pre-trial detention, but only for one (rather than both) of his two consecutive sentences. That was the right thing to do under the law then in effect. But Taylor was entitled to the more generous provision in effect at the time his sentence was entered. As a result, he served over a year longer than he should have.

After his release, Taylor brought suit against various Louisiana officials under 42 U.S.C. § 1983, among other claims. This appeal concerns only one of those claims: Taylor's claim against the head of the Department,

No. 21-30625

Secretary James LeBlanc. LeBlanc appeals the denial of qualified immunity arguing, *inter alia*, that his conduct wasn't objectively unreasonable in light of clearly established law.

The right to timely release is clearly established. But Taylor does not show how LeBlanc's conduct was objectively unreasonable in light of clearly established law. Taylor contends that LeBlanc was objectively unreasonable because he failed to assign the task of calculating release dates to an attorney. But nothing in the Constitution requires that such actions be undertaken by a member of the bar. Accordingly, we reverse.

## I.

For purposes of this appeal, we accept the factual allegations in Plaintiff's complaint as true. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Taylor was imprisoned for a Louisiana felony conviction. He was later released on parole for good behavior.

While on parole, Taylor was arrested, detained pending trial, and eventually convicted on another felony offense. His parole for his first offense was revoked, and he was additionally sentenced to a second, consecutive term of imprisonment.

During his imprisonment, Taylor concluded that Department officials had miscalculated his release date. So he filed a grievance. He argued that the time he spent in pre-trial detention prior to his second conviction should have been credited to both of his sentences, rather than just his second sentence. Relatedly, he also argued that his parole on his first conviction should have been deemed revoked as of his arrest on the second offense, rather than at the time of his conviction. A non-attorney Department

3

employee denied the grievance, seemingly misconstruing it as a request for good time credits he wasn't entitled to.

Taylor appealed his grievance unsuccessfully. The denial order explained that, under current law, the time Taylor spent in pre-trial detention could not be credited toward his first sentence. *See* LA. CODE CRIM. PROC. art. 880(E). The order noted that overlapping credits are prohibited when the sentences are consecutively, rather than concurrently, imposed. *See id.* at 880(B).

Taylor sought review from the state district court. A commissioner issued a report recommending that the court grant the petition for review. The report concluded that Taylor's time in jail should have been credited toward both sentences, under the law in effect at the time his sentence was entered.

The court adopted the recommendation and ordered that Taylor's release date be recalculated. According to the correctly calculated release date, Taylor should have been released over a year earlier.

Taylor sued, bringing various claims seeking damages for false imprisonment, including a § 1983 claim against LeBlanc. The operative complaint alleged, *inter alia*, that LeBlanc—a final policymaker—failed to implement policies to ensure his timely release, and failed to train or supervise the employees who administer the grievance process. The complaint alleged that LeBlanc was aware of concerns that a substantial number of inmates were being overdetained.

The district court granted in part and denied in part the motion to dismiss. As relevant here, the court denied the motion as to the claim against LeBlanc, finding that he wasn't entitled to qualified immunity.

No. 21-30625

LeBlanc appealed the denial of qualified immunity.[1]

## II.

"Under the collateral order doctrine, we have jurisdiction to review orders denying qualified immunity." *Carswell v. Camp*, 54 F.4th 307, 310 (5th Cir. 2022). We review de novo a district court's denial of a motion to dismiss on qualified immunity grounds, accepting as true all well-pleaded facts and drawing all reasonable inferences in favor of the nonmoving party. *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc).

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation omitted). "A public official is entitled to qualified immunity unless the plaintiff demonstrates that (1) the defendant violated the plaintiff's constitutional rights and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation." *Porter*, 659 F.3d at 445. We are free to decide which prong of the qualified immunity analysis to address first. *See Pearson*, 555 U.S. at 242

---

[1] Taylor argues that the district court shouldn't have dismissed the other claims. We lack jurisdiction to review those dismissals on interlocutory appeal. This court has jurisdiction to review final decisions of a district court. *Tracy v. Lumpkin*, 43 F.4th 473, 475 (5th Cir. 2022). But the collateral-order doctrine presents a "narrow" exception to that principle. *Id.* Under the collateral-order doctrine, "non-final orders are immediately appealable if they: (1) conclusively determine the disputed question; (2) resolve an important issue completely separate from the merits of the action; and (3) are effectively unreviewable on appeal from a final judgment." *Id.* (cleaned up). Taylor's remaining claims don't fall within this exception. Nor does pendant jurisdiction exist, because those other claims are not "inextricably intertwined" with the denial of qualified immunity for Secretary LeBlanc. *Cutler v. Stephen F. Austin State Univ.*, 767 F.3d 462, 468 (5th Cir. 2014).

("[T]he judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking that will best facilitate the fair and efficient disposition of each [qualified immunity] case.").

It is clearly established that inmates have the right to timely release from prison consistent with the terms of their sentences. *See Crittindon*, 37 F.4th at 188; *Porter*, 659 F.3d at 445. But under prong two of the qualified immunity analysis, Taylor must also show how Secretary LeBlanc's "actions were objectively unreasonable in light of clearly established law at the time of the violation." *Porter*, 659 F.3d at 445.

The Supreme Court has repeatedly made clear that "[w]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the *objective legal reasonableness* of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (cleaned up, emphasis added).

So a plaintiff must show that "the conduct of the defendants was objectively unreasonable in the light of . . . clearly established law." *Hare v. City of Corinth, Miss.*, 135 F.3d 320, 326 (5th Cir. 1998) (emphasis omitted). *See also*, *e.g.*, *Roque v. Harvel*, 993 F.3d 325, 334 (5th Cir. 2021) (defendant "is entitled to qualified immunity unless his actions were objectively unreasonable in light of clearly established law") (quotations omitted); *Blake v. Lambert*, 921 F.3d 215, 219 (5th Cir. 2019) (qualified immunity turns on whether defendant's conduct is "objectively unreasonable in light of clearly established law"); *Hinojosa v. Livingston*, 807 F.3d 657, 669 (5th Cir. 2015) (same).

But the objectively unreasonable standard is not "that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is . . . that in the light of pre-existing

law the unlawfulness must be apparent." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citation omitted). The critical consideration is fair warning. *See id.* at 739–41.

### III.

Department officials declined to credit Taylor's pre-trial detention to both of his consecutive sentences. That was correct under current law. *See* La. Code Crim. Proc. art. 880(B). But it was wrong here, because Taylor's release date should have been governed by the law applicable at the time of his sentence. That would have allowed Taylor to credit his jail time to both of his sentences.

This appeal, however, does not concern the conduct of lower-level officials at the Department. Rather, the question before us is whether LeBlanc was objectively unreasonable in how he supervised the entire Department.

Taylor contends that LeBlanc should have delegated the calculation of release dates to lawyers rather than non-lawyers—and that his failure to do so was objectively unreasonable. But Taylor does not point to anything that suggests the Constitution requires these determinations be made by attorneys.

We reverse.